UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00333-MOC

| | |
|---|---|
| **REGINALD ANTHONY HUTER,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| Vs. ) | MEMORANDUM OF DECISION |
| ) | AND ORDER |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the court on respondent's Motion to Dismiss, which is contained in the government's Response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (#15). After initial screening of the Petition and entry of the 60-Day Order, petitioner filed five motions to amend or supplement the pleadings. The court denied the first request without prejudice, Order (#5), allowed three other supplements, Orders (#8, & #13), and denied the final request to supplement, that was filed five days before the respondent filed its Response. Order (#16). The court incorporates herein the substance of such Order (#16) denying the final request as well as the additional reasoning of the respondent in its brief, filed before the court could reach the final request for amendment.

After conducting a preliminary review of the respondent's Motion to Dismiss the petition as supplemented, the court entered an Order allowing petitioner an opportunity to file a Reply. Petitioner has timely filed his Reply (#20) and the court has carefully considered petitioner's arguments, the materials he has attached thereto, and the contentions in his Petition as supplemented.

1

**FINDINGS AND CONCLUSIONS**

**I.      Background**

In the underlying criminal action, United States v. Hunter, 3:12cr289, petitioner was indicted for armed bank robbery (Count 1) and use of a firearm in furtherance of a crime of violence (Count 2), all in violation of 18 U.S.C. § 2113(a) & (d) and § 924(c)(1)(A), respectively. Indictment (#16).[1] After the Indictment was returned, respondent filed a Notice of Eligibility for Enhanced Sentence under § 851 and § 3559(c)(1) setting forth petitioner's four prior qualifying offenses. Notice (#20).   Had such notice not been withdrawn, petitioner would have faced mandatory life imprisonment upon conviction. Id.

After successfully staving off the Indictment for several months so that she could conduct an investigation aimed at reducing the charges, counsel for petitioner negotiated a Plea Agreement (#21) as to both offenses.  While petitioner pled guilty to both offenses, the plea took mandatory life imprisonment off the table, provided petitioner with three points off for acceptance of responsibility, and allowed counsel to argue for a downward variance.  Among other terms, the plea also included an appellate and post-conviction waiver.

After the Plea Agreement was negotiated, petitioner, on his own, discovered that a boilerplate provision requiring waiver of federal benefits did not apply to him because he was not a drug offender.  As a result, the parties agreed to add the term "if applicable" to such provision. See id. at ¶ 23.  Petitioner signed such agreement, as revised, on December 14, 2012. Id. at 6.

On December 20, 2012, David Cayer, United States Magistrate Judge, conducted a plea hearing under Rule 11 at which petitioner was sworn and answered the questions posed by the

---

[1] Unless otherwise indicated, all docket entries from this point forward in the decision are in reference to docket entries in the underlying criminal action.

court. Plea Acceptance (#22); see also Transcript of Plea Hearing (#44). Important to the issues raised herein, the magistrate judge asked petitioner questions concerning his state of mind, including questions concerning any medication he was taking.

> THE COURT: Are you now under the influence of any alcohol or drugs?
>
> THE DEFENDANT: Just medication, but it's not affecting my judgment.
>
> THE COURT: What medication are you taking, sir?
>
> THE DEFENDANT: Blood pressure and Tylenol.

Id. at 3. Also important to the contentions raised by petitioner herein, the magistrate judge questioned petitioner concerning whether anyone had threatened or otherwise coerced him to plead guilty and whether he was satisfied with the services of his attorney, as follows:

> THE COURT: Has anyone threatened, intimidated, or forced you to enter a guilty plea today?
>
> THE DEFENDANT: No.
>
> THE COURT: Other than the terms of your plea agreement, has anyone made you any promises of leniency or a light sentence to induce you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Have you had enough time to discuss with your attorney any possible defenses you may have to these charges?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you satisfied with the services of your attorney in this case?
>
> THE DEFENDANT: Yes.

Id. at 10. After considering the answers given by the petitioner, Judge Cayer determined that the plea was knowing and voluntary and accepted the plea. Id. at 11.

Over a year later at sentencing, this court personally reviewed with petitioner the answers he had given to Judge Cayer in the following exchange:

THE COURT: All right. Mr. Hunter, do you recall appearing before a United States Magistrate Judge for the purpose of entering a plea of guilty in this case?

MR. HUNTER: Yes, Your Honor.

THE COURT: Do you remember being placed under oath at that time?

MR. HUNTER: Yes, Your Honor.

THE COURT: Do you remember answering the judge's questions?

MR. HUNTER: Yes, Your Honor.

THE COURT: Do you remember signing a Plea Transcript Form wherein you stated the answers you gave the judge were true and accurate, to the best of your knowledge?

MR. HUNTER: Yes, Your Honor.

THE COURT: Were the answers you gave the judge that day true?

MR. HUNTER: Yes, Your Honor.

THE COURT: If I were to ask you the same questions today, would your answers be the same?

MR. HUNTER: Yes, Your Honor.

THE COURT: All right. Thank you. Counsel, do you believe your client understood fully the questions the Magistrate Judge asked at the Rule 11 hearing?

MS. BLACKWOOD: I do, Your Honor.

THE COURT: Thank you. Mr. Hunter, did you answer the questions the way you did and are you going forward with your guilty plea today because you did commit the crimes you're pleading guilty to?

MR. HUNTER: Yes, Your Honor.

THE COURT: Then based on those representations and the answers given by the defendant at the Rule 11 hearing before the Magistrate Judge, the Court affirms the judge's finding that the defendant's plea was knowingly and voluntarily made. The Court also affirms the judge's finding that the defendant understood the charges, the potential penalties, and the consequences of his plea. Accordingly, the Court affirms the Magistrate Judge's acceptance of the defendant's plea of guilty at the Rule 11 hearing.

Sentencing Transcript (#35) at 6-7. In between acceptance of the Plea and Sentencing, petitioner elected to participate in an interview by the United States Probation Office. The probation officer advised in the final Presentence Report (#30) that

> The defendant describes his physical health as good. Mr. Hunter states he underwent neck surgery in October 2012, in an effort to have a broken bone in his neck treated. He receives an over the counter pain reliever from the jail staff. The defendant also noted that he is hypertensive; consequently, he is prescribed HCTZ.

Final PSR (#30) at ¶ 60.

At sentencing (which was a combined proceeding for the offenses underlying this conviction and for violation of supervised release ("SRV") stemming from a prior conviction), this court ran the sentence for the SRV violation concurrent with the sentence on the new charges for a total sentence of 262 months, Judgment (#36), a bottom of the guidelines sentence. Prior to entry of the sentence, counsel for petitioner argued for a downward variance based on petitioner's difficult formative years and on a contention that the bank robbery resulted from a need to pay off a debt to drug dealers who he contended were threatening him and his family. Sentencing Transcript (#35) at 23-24. Petitioner also addressed the court in a well thought out allocution. In denying the variance, this court stated in pertinent part, as follows:

> So it's a dangerous crime. So I really don't know what to do. I mean, you're very well-spoken. One of the best allocutions I've heard in a situation for a crime of this nature.
> I mean, it is really -- I'm not trying to make small of it or anything like that, but I don't know what else I can do. I mean, I'm sitting here hurting at the sentence that I have to give because I don't like to give the big sentences, but I don't always get to do what I like.
> ***
> But I would be remiss in my duties if I didn't make this … a guideline sentence. I'll go the lower end of the guideline, but that's the best I can do in this sentence. And I hate it.

Id. at 30-31. During sentencing, the attorneys also approached the bench to point to the Sentencing Guidelines manual in order to verify that the calculations in the PSR were correct. This "sidebar" proceeding was conducted in open court and a verbatim record was made. Id. at 17-20,

After entry of the Judgment (#36), petitioner with the assistance of appellate counsel rom the community defender's office timely noticed an appeal. In that appeal, counsel filed an *Anders* brief, but questioned whether petitioner was properly classified as a career offender. In a supplemental *pro se* pleading, petitioner argued that: (1) this court misunderstood its authority to impose a variance; (2) he had been excluded from a sidebar conference at sentencing; and (3) counsel had provided ineffective assistance. In its decision, United States v. Hunter, 589 F. App'x 196 (4th Cir. 2015), the Fourth Circuit held that petitioner was properly sentenced as a career offender, that this court understood its authority to vary from the advisory guidelines range, and that "the sidebar was on the record and was merely to consult as to the appropriate application of the Guidelines." Id. at 197. Because there was no conclusive showing of ineffective assistance on the record, the appellate court found that any such claims should be pursued under § 2255. Id. This collateral attack timely followed.

## II. Petitioner's Contentions

The court has closely read the initial Petition in conjunction with each allowed supplement. The court has determined that petitioner has presented the following claims:

    I.    Ineffective Assistance of Trial Counsel

        A.    Counsel Conducted an Inadequate Investigation
        B.    Counsel Failed to Investigate his Duress Defense
        C.    Counsel Failed to Review and Explain Discovery
        D.    Counsel was Deficient in Plea Negotiations
        E.    Counsel Failed to Investigate his Medical Condition Prior to the Plea Hearing, Told Him to Lie to the Court as to the

|      |    | Medications he was Taking, and Generally Manipulated Him into Accepting the Plea, making the Plea Unknowing and Involuntary |
|---|---|---|
|      | F. | Counsel was Ineffective Because More than One Community Defender Represented Him |
|      | G. | Counsel was Ineffective for Failing to Object to his Career Offender Status in the Draft PSR |
|      | H. | Counsel was Ineffective by Participating in a Sidebar During the Sentencing Hearing |

    II.    Appellate Counsel was Ineffective by Failing to Raise an Ineffective Assistance of Trial Counsel Claim on Appeal Due to a Conflict of Interests.

Having considered respondent's petition as supplemented, along with the pleadings of record in the underlying criminal action, the briefs in this civil matter, and the materials petitioner has submitted, the court will address each contention and sub-contention *seriatim*.

## III.   Discussion

### A.   Ineffective Assistance of Trial Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 687, 687-91 (1984). In order to satisfy the performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id., at 687-88. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id., at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992). The prejudice prong is satisfied by showing that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id., at 694. The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at

7

1297 (citation omitted). If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Id., at 1290, citing Strickland, 466 U.S. at 697.

In considering the prejudice prong of the analysis, the court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993).

### 1. Counsel Conducted an Inadequate Investigation

Petitioner contends that his trial counsel conducted an inadequate investigation of the facts and circumstances surrounding the two counts charged in the Indictment. Specifically, petitioner contends that his attorney failed to interview witnesses and accomplices who were present when he robbed the bank at gunpoint and that she failed to contact character witnesses. The only witness petitioner identified in his petition, as supplemented, was Lavant Jackson. Civil Action, Supplement to Petition (#9) at 2. In support of this argument, petitioner provided email correspondence with his trial attorney. Id. at 11-16. The court has considered the emails petitioner has submitted and they are antithetical to his claim that counsel failed to conduct an adequate investigation. The emails clearly show that counsel assigned an investigator to interview Mr. Jackson, but that Mr. Jackson, through his own counsel, refused to be interviewed. Id.

Petitioner also alleged that trial counsel failed to interview three drug dealers who had threatened him over non-payment of a drug debt. Again, contrary to petitioner's conclusion, these emails show that counsel attempted to locate these men, but that such attempts were unsuccessful, with counsel concluding that these men knew they were wanted for questioning and were alluding

8

interview. Id. at 15. "[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996). The court has given careful and close consideration to petitioner's contentions and finds no evidence that trial counsel failed to investigate or that petitioner has made an adequate proffer of what *favorable* testimony three drug dealers, who allegedly sold drugs to petitioner while on supervised release, would have been able to provide. Such conclusory allegations are insufficient to establish either deficient performance or prejudice. United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations), cert. denied, 135 S. Ct. 47 (2014).

### 2. Counsel Failed to Investigate his Duress Defense

Defendant next contends that trial counsel was ineffective because she failed to investigate his theory that the offense was committed under duress. This sub-contention substantially overlaps the first sub-contention inasmuch as petitioner contends that had counsel interviewed the three drug dealers, they would have confirmed that he owed them a drug debt and would have harmed him or his family if he had not paid them.

While the court will assume as petitioner argues that these men *could* have testified that he owed them a drug debt, that they were going to harm him or his family if the debt was not repaid, and it was repayment of that debt that inspired petitioner to rob a bank at gunpoint, there is no plausible projection of how this line of evidence would have produced a different result. Indeed, while petitioner may speculate that such scenario would form the basis of viable offense of duress, he has failed to make a proffer that these drug dealers *forced* him to rob a bank at gunpoint to pay them back. It has long been held, "if there was a reasonable, legal alternative to violating the law,

9

'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail." United States v. Bailey, 444 U.S. 394, 410 (1980) (citation omitted). More to the point in the context of committing a bank robbery,

> A defendant may raise the affirmative defense of duress by presenting evidence that he acted because of a well[-]grounded fear of immediate death or serious injury and that he had no reasonable opportunity to avoid the threatened harm except by committing the crime. United States v. Neal, 990 F.2d 355, 359 (8th Cir.1993); United States v. King, 879 F.2d 137, 139 (4th Cir.), cert. denied, 493 U.S. 900 (1989).
>
> ***
>
> The district court found that Bailey had a reasonable opportunity to avoid any threatened harm by means other than robbing the bank but failed to take advantage of the presence of the policewoman. Moreover, the court found that Bailey did not believe he was in immediate danger of being killed should he fail to commit the robbery. A generalized fear is not sufficient. United States v. Stevens, 985 F.2d 1175, 1182 (2d Cir.1993).

United States v. Bailey, 77 F.3d 471 (4th Cir. 1996). Here, petitioner's circumstances are even less compelling as there is no contention that these three men threatened to immediately kill petitioner if he did not rob the bank; rather, the only evidence here is that it was petitioner who decided to commit armed bank robbery as an expedient to pay the men back for a debt *he* created through engaging in other unlawful conduct, to wit, purchasing unlawful controlled substances on credit. Petitioner has not established deficient performance or prejudice based on the failure to pursue duress defense. Strickland, 466 U.S. at 687-88, 694.

### 3. Counsel Failed to Review and Explain Discovery

Petitioner next contends that his attorney failed to review and explain discovery to him. He complains that she sent a paralegal to the jail, who was unable to answer his questions.

Petitioner does not explain what questions he had about the discovery or how answers to those questions may have impacted the outcome of the criminal action. Put another way, petitioner has not alleged how additional information about discovery documents could have changed the

result of the proceeding by convincing him to not plead guilty. Petitioner has shown neither deficient performance nor prejudice based on these conclusory allegations. Strickland, 466 U.S. at 687-88.

### 4. Counsel was Deficient in Plea Negotiations

Petitioner next contends that counsel was deficient in her plea negotiations with the government. As discussed above, this is petitioner's least promising contention as not only was counsel successful at taking a mandatory life sentence off the table, she preserved petitioner's right to argue for a downward variance at sentencing in an armed bank robbery, where the gun was brandished, and where the defendant already had multiple armed bank robbery convictions under his belt. Instead, petitioner argues that counsel provided ineffective assistance by not discussing with him: (1) the reasons for requesting a postponement of the indictment; (2) negotiations with the government regarding the waiver of his appeal rights; and (3) his eligibility for the § 3559 enhancement. Civil Action, Supplement to Petition (#9) at 1. He also contends that counsel negotiated a change to the plea agreement after he signed it. Id. at 2. He cites a series of emails between his counsel and the government in support of his contentions. Id. at 5-23.

Petitioner's claims of ineffective assistance are again antithetical to the emails he has provided as it appears that counsel zealously advocated for petitioner even before the indictment was returned. The court finds a number of things that counsel was able to accomplish to be remarkably effective, not the least of which was her ability to convince the government not to return an indictment so that trial counsel could investigate the case in an attempt to get the gun count dropped before it was brought. Id. at 9-10, 15. This is representation at the highest possible level. In less than five months from the bank robbery, petitioner was indicted. Petitioner has not shown prejudice from any delay in return of the indictment nor has he shown that this delay had

11

any impact on his decision to plead guilty. Strickland, 466 U.S. at 687-88.

Petitioner also contends that his attorney's conceding to an appeal waiver was also ineffective and that counsel failed to discuss that waiver with him. That contention is not only countered by the transcripts of the Plea Hearing and the Sentencing Hearing, it is not consistent with the "case outline" petitioner attached (in part) to his supplement. That case outline specifically provides that in the Plea Agreement, petitioner gives up certain appellate rights if he accepts the Plea Agreement:

> VII. Plead Straight Up v. Plea Agreement
> a. When you sign a plea agreement, you are giving up most appellate rights, except for claims of ineffective assistance of counsel or prosecutorial misconduct. Often,

Civil Action, Supplement to Petition (#9) at 25 (petitioner did not include the page that followed). Petitioner's contention is not only conclusory, it is inapposite to his own exhibits. Thus, he was adequately advised as to the plea waiver provisions of his plea.

Finally, petitioner has not explained how his attorney's successful bargaining for the right to seek a downward variance at sentencing was to his detriment. Indeed, with numerous armed bank robbery convictions already on his record and already obtaining a concession of mandatory life, it was a remarkable achievement on counsel's behalf.

As to all of these sub-contentions, petitioner does not assert that had he been better informed concerning these negotiations (which were overwhelmingly favorable) he would not have pleaded guilty. Indeed, had petitioner gone to trial and lost, the court would not have been able to consider a variance or a low end of the guidelines sentence and run his SRV violation concurrent rather than consecutive, but would have had to impose a mandatory life sentence. Petitioner has failed to show deficient performance or prejudice. Strickland, 466 U.S. at 687-88

### 5. Counsel Failed to Investigate his Medical Condition Prior to the Plea Hearing, Told Him to Lie to the Court as to the Medications he was Taking, and Generally Manipulated Him into Accepting the Plea, making the Plea Unknowing and Involuntary

In this sub-contention, petitioner makes some troubling contentions, not the least of which is his allegation that his attorney told him to lie to Judge Cayer about the medications he was taking at the time of the Plea Hearing. Although troubling, such contentions find no support in the materials petitioner submitted.

Petitioner contends that his trial attorney advised him that if he told Judge Cayer about other medications he was taking and the impact they had on his ability to think, his Plea would not be accepted and that he should lie to the judge. Civil Action, Reply (#20) at 6-7. In his Reply brief, petitioner appears to contend that he was taking "Elavil, Loratab, Norco, Ultran, Flexiril, Prednisone, Naprosyn, Hydrochirothiazide, Zantac, Hydrocodone, and Tylenol" at the time of the Plea Hearing. Id. at 6 (misspellings in the original). The court notes that petitioner has attached his 2015 medical records from the Bureau of Prisons to his Reply; however, these records have no correlation to the Plea in 2012 or sentencing in 2014.

Petitioner has also attached to various points, and in no particular order, medical records generated during his pretrial detention in this district. These records are relevant to his claims, but do not support his contention that he was taking four opioid medications (LORTAB, NORCO, ULTRAM, and HYDROCODONE) at the time of the plea. While the medications for pain he was receiving immediately after the operation on October 15, 2102, included at least one opioid pain reliever, see Civil Action, Petition (#1) at 12 ("Plaintiff A page 7"), the final "Physician's Order" of record predating the plea (Civil Action, Supplement to Petition ( #6) at 10) shows that by October 24, 2012 -- nearly two months before the Plea Hearing -- his doctors discontinued Elavil

13

and Naprosyn, and only renewed his blood pressure medicine for hydrochlorothiazide, which is simply a diuretic, as shown in the following note:

> Date & Time: 10/24/12 15:20 ☐ Another brand of drug identical in content may be dispensed unless checked.
> D/C Elavil & Naprosyn
> Renew HCTZ 25mg 1 po QD x 90 days.

Id. This is consistent with the report defendant made to Judge Cayer and later to United States Probation as hydrochlorothiazide was the only prescription medication he was then taking. (Petitioner also reported Tylenol, which is not a prescription medication). Thus, there is absolutely no support for petitioner's contention that he was taking prescribed narcotic controlled substances at the time of the plea and that his attorney told him to lie; in fact, the medical records clearly show that at the Plea Hearing petitioner was then telling the truth.

Finally, there is absolutely no evidence that petitioner's plea was unknowing or involuntary based on any cognitive deficit. The notes from petitioner's physicians indicated that he received treatment for bulging discs in his neck. There is no evidence of any brain injury. Indeed, the evidence indicates that the surgery he received while in jail for his bulging discs was remarkably successful. Perhaps most instructive is petitioner's demonstrated ability to discover an error in his Plea Agreement and report it to his attorney, who then negotiated an amendment. In addition, the court has reviewed petitioner's answers to the questions posed by the court and notes as it did at sentencing his remarkable skills at allocution.

Based on this record, petitioner's contentions that his attorney told him to lie and that his plea was involuntary and unknowing because he was taking mind-altering substances at the time of the plea, or that he was suffering a cognitive deficit, are wholly without merit as they are unsupported.

14

### 6. Counsel was Ineffective Because More than One Community Defender Represented Him

The fact that petitioner received the benefit of the assistance of two community defenders is not an actionable claim. Even if the second attorney was simply behind the scenes providing backup or guidance for primary counsel and had no interaction with petitioner, he has no basis for complaint as he has neither shown deficient performance nor prejudice from such additional representation. Such allegation is, therefore, conclusory and is denied.

### 7. Counsel was Ineffective for Failing to Object to his Career Offender Status in the Draft PSR

Petitioner raised the issue of whether he was properly classified as a career offender on direct appeal and the appellate court affirmed such classification. Hunter, 589 F. App'x a 197. Such contention cannot, therefore, form the basis for a collateral attack under Section 2255 because petitioner cannot show that counsel's failure to object to a lawful classification was deficient or prejudicial. Strickland, 466 U.S. at 687-88, 694.

### 8. Counsel was Ineffective by Participating in a Sidebar During the Sentencing Hearing

Next, petitioner argues that counsel was ineffective because she did not discuss the outcome of a sidebar during sentencing, which prevented petitioner from objecting. On appeal, petitioner argued that he was excluded from the sidebar, but the Fourth Circuit found that "the sidebar was on the record and was merely to consult as to the appropriate application of the Guidelines." Hunter, 589 F. App'x at 197. Petitioner has not shown how such on-the-record sidebar to confirm what the advisory Sentencing Guidelines Manual provided amounted to deficient performance or how that it actually prejudiced him, as he has not alleged what meritorious

15

objection he would have interposed absent the purportedly defective representation. Strickland, 466 U.S. at 687-88, 694.

### B. Ineffective Assistance of Appellate Counsel

Finally, petitioner argues that his appellate counsel was ineffective because he failed to raise an ineffective assistance of trial counsel claim on direct review based on a conflict of interest stemming from both attorneys being employed by the Community Defender.

Courts should ordinarily only find ineffective assistance for failure to raise claims on appeal when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden to show that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, i.e., he would have prevailed on appeal. See Robbins, 528 U.S. at 285-86.

Here, counsel made the strategic decision to file an *Anders* brief because she did not find any non-frivolous issues to pursue on appeal. Even if petitioner could show an actual conflict, to wit, that appellate counsel did not want to claim ineffective assistance simply to protect a colleague, he cannot show adverse effect. As the Fourth Circuit found when petitioner raised the issue of ineffective assistance on appeal in his pro se supplemental brief, there was no conclusive evidence of ineffective assistance on the record, so this issue was not properly brought on appeal in any event. *Hunter*, 589 F. App'x at 197. Indeed, the record as this court has closely reviewed provides *no* evidence of ineffective

assistance of counsel and overwhelming evidence that petitioner received representation of the highest caliber. Thus, there was not an objectively reasonable alternative strategy that could have been brought by counsel and this claim will be dismissed.

## ORDER

**IT IS, THEREFORE, ORDERED** that respondent's Motion to Dismiss (#15) is **GRANTED**, and the Petition as supplemented is **DISMISSED WITH PREJUDICE**.

### Denial of Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this court declines to issue a certificate of appealability as petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller -El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484–85 (2000) (in order to satisfy § 2253(c) when court denies relief on procedural grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right).

Signed: February 5, 2016

Max O. Cogburn Jr
United States District Judge