# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:12-cr-289-MOC-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| REGINALD ANTHONY HUNTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Defendant's pro se Motion for

Compassionate Release/Reduction of Sentence. (Doc. No. 86). The Government has filed a brief

in opposition to the motion. (Doc. No. 89).

## I.      BACKGROUND

Defendant is a serial bank robber, having robbed four banks in 1993, two in 2000, and

one in 2012. (PSR ¶¶ 7, 36, 37). Defendant's behavior escalated with each set of robberies. In

1993, he presented notes demanding money; in 2000, he gave the tellers notes that threatened the

use of a gun; and in 2012, he brandished a gun and pointed it at two tellers and a customer. (Id.).

For his 1993 convictions, this Court sentenced Defendant to 92 months of imprisonment and a

term of supervised release, which the Court revoked upon his conviction for the 2000 robberies.

(Id. ¶ 36). For the 2000 robberies, the Court sentenced Defendant to 151 months imprisonment

and a term of supervised release, which the Court revoked when the Court convicted him of the

2012 robbery. (Id. ¶ 37).

Defendant's seventh and last robbery resulted in convictions for Armed Bank Robbery

and Using and Carrying a Firearm During and in Relation to a Crime of Violence. (Doc. No. 36).

On June 10, 2014, the Court sentenced Defendant to 262 months imprisonment and a concurrent

1

22-month sentence for the supervised release violation. (Id.).

On appeal, the Fourth Circuit affirmed Defendant's sentence. United States v. Hunter, 589 F. App'x 196, 198 (4th Cir. 2015). Defendant filed a Section 2255 motion, which the Court dismissed. (Doc. No. 50). Defendant appealed, and the Fourth Circuit dismissed the appeal. United States v. Hunter, 654 F. App'x 635 (4th Cir. 2016). In 2018, Defendant filed what the Court construed to be another unauthorized, successive § 2255 motion to vacate, which the Court dismissed. Hunter v. United States, No. 3:12-CR-00289, 2018 WL 3747280, at *4 (W.D.N.C. Aug. 7, 2018).

On April 2, 2020, Defendant submitted a compassionate release request to the BOP and alleged that he presented extraordinary and compelling reasons for release based on his "medical condition" and "reasons described in subdivision (A) though (C) of Sentencing Commission Policy Statements." (Doc. No. 61-1, p. 21). In denying Defendant's request, the Warden stated "that a medical evaluation was conducted and found that you do not have an incurable, progressive illness from which you will not recover, you are capable of self-care and not confined to a bed or chair more than 50% of waking hours," that "[t]he evaluation concluded that all of your conditions are controlled though medication," and that "you are capable of performing activities of daily living (AOL) without assistance and are capable of carrying out self-care." (Id., p. 22). Defendant filed a request for reconsideration, which the Warden denied. (Id., pp. 24–25).

Defendant filed his first Motion for Reduction in Sentence with this Court on July 7, 2020. In it, he argued that his neck and head injuries as well as his age and susceptibility "of contracting the virus because of his underlying medical conditions" amounted to extraordinary and compelling reasons for his early release. (Id., pp. 3–4). Defendant listed his medical

2

conditions as "Hypertension, Disorder of pituitary gland, Migraine, Astigmatism, Occlusion and stenosis of precerebral artery, Cervical disc disorder, Congenital malformation of circulatory system, [and] Ischemic heart disease." (Doc. No. 61, p. 5). This Court denied Defendant's motion, finding that Defendant had not shown that he had "an increased health risk from COVID-19," and, thus, had not established extraordinary and compelling reasons for his release. (Doc. No. 62, p.2).

Defendant then filed a motion for reconsideration, which, because it did not offer any new medical evidence, the court denied for the same reasons it denied his first motion. (Doc. No. 67). The Court invited Defendant to file again for compassionate release, first with the BOP and then with the Court, "once the Defendant's scheduled medical exams are complete." (Doc. Nos. 65, 67). Defendant ignored the Court's instruction to first make his request with the BOP, and, instead, skipped that step and filed another motion for compassionate release with this Court on February 11, 2021. (Doc. No. 68).

As with his first motion, Defendant argued that his underlying medical conditions — the same ones that he listed in his first motion for compassionate release — might "become seriously detrimental to his health if he contracts COVID-19." (Doc. No. 68, p. 2). Defendant failed to note that he received his second dose of the COVID-19 vaccine nine days before filing his motion. (Gov't Ex. 1, p. 108). Defendant also argued that his sentence should be reduced because the facility where he resides did not "provide and maintain a safe environment to work and live;" he was "no longer a danger to any person or the public;" and he had a safe release plan. (Doc. No. 68, p. 1). This Court again denied Defendant's motion because "Defendant has not submitted evidence to the Court showing that he has an increased health risk from COVID-19, particularly given that he has now been fully vaccinated for COVID-19," and, thus, Defendant failed to

"establish[] extraordinary and compelling reasons" for his release. (Doc. No. 75, p.1).
Additionally, this Court found that even if Defendant had established extraordinary and
compelling reasons, the Section 3553(a) factors "weigh[ed] against any reduction…given
Defendant's lengthy criminal history and his high risk of recidivism." (Id. p. 2).

On March 11, 2022, Defendant requested that the BOP reduce his sentence and
indicated on the form that he suffered from a debilitating medical condition—"a (TBI) and
related symptoms of a tumor at the base of my brain."[1] (Gov't Ex. 2, p.1). The Acting Warden
denied Defendant's request and stated that Defendant did not have a Debilitated Medical
Condition because he did not "have an incurable disease and progressive illness," and had not
"suffered a debilitating injury from which [he] will not recover." (Gov't Ex. 3). The Warden
went onto say that Defendant's "medical provider revealed that [he did] not meet the medical
criteria of debilitated," since he did "not suffer from a progressive illness that has affected [his]
ability to self-care and [he is] not confined to a bed or chair 50% of waking hours." (Id.).

Defendant filed his latest motion for compassionate release on December 19, 2022. (Doc.
No. 86). In his motion, Defendant makes substantially the same arguments that he made in his
prior motions for compassionate release, mainly that his medical conditions, BOP's failure to
adequately treat them, especially his pituitary gland tumor, and his increased susceptibility to
COVID-19 or other diseases in prison amount to extraordinary and compelling reasons for his
release. (Id. at pp. 3–6, 10–11). Despite his long and progressively violent criminal history,
Defendant claims, again, that the Section 3553(a) factors weigh in favor of release. Defendant
has served approximately half of the sentence for his most recent robbery conviction and

---

[1] On the form, Defendant also marked "Elderly Inmate with Medical Conditions" as a
basis for his release. However, this ground is not available to Defendant as it only applies to
inmates who are 65 or older, and Defendant is 59 years old. (Gov't Ex. 2).

4

supervised release violation.[2]

## II.    DISCUSSION

Once a defendant properly exhausts his administrative remedies, this Court may reduce
Defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. §
3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons
warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy
statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). Section 1B1.13 of the
United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement
applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. That policy statement,
however, was adopted before the First Step Act, and the Sentencing Commission has not updated
the policy statement to account for the fact that defendants are now permitted to file their own
motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of
Appeals held that Section 1B1.13 is no longer an "applicable" policy statement that constrains
the discretion of the district courts in finding that "extraordinary and compelling reasons" exist to
warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020)
("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under
§ 3582(c)(1)(A)"). Thus, the Court is "empowered . . . to consider any extraordinary and
compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v.
Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may consider the Section 1B1.13
factors, however, because that Section "remains helpful guidance even when motions are filed by
defendants." Id. at 282 n.7. As the movant, Defendant still bears the burden of establishing that

---

[2] The Government asserts that as of January 23, 2023, Defendant has served 10 years and 9
months, which is 49.2% of his full term and 56.4 of his statutory term. (Gov't Ex. 1).

he is eligible for a sentence reduction, and that includes establishing that "extraordinary and compelling reasons" justify his request. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

As with his prior motions for compassionate release and reconsideration, Defendant has not shown the existence of "extraordinary and compelling reasons" warranting a sentence reduction. In his current motion, Defendant cites several health concerns (obesity, hypertension, dental problems, COVID-19) that he raised in his previous compassionate release motions or, based on his medical records. These health concerns do not cause him daily issues and are receiving proper treatment in the BOP. (Gov't Ex. 5). Defendant's main, non-redundant claim is that the BOP is not appropriately concerned with and caring for his pituitary gland tumor. (Doc. No. 86, pp. 10–14). According to Defendant's medical records, he was diagnosed with a pituitary tumor, and, in 2020, a neurologist recommended surgery to remove it. (Gov't Ex. 4). However, Defendant has not yet had the surgery because he needs various medical evaluations before he can be cleared for surgery. (Id.). An email that BOP medical staff provided to BOP counsel explains that Defendant's movement between BOP facilities has delayed these evaluations and the surgery. (Gov't Ex. 6). The email also states that "[t]he pituitary tumor was noted as early as 2017 and has never required emergent surgical intervention despite [Defendant] being seen by multiple outside providers;" the need to treat the condition "on an immediate basis has not been displayed;" and the tumor is not "terminal in nature." (Id.). The Government asserts that the BOP has taken steps to address Defendant's medical condition commensurate with its non-emergent and non-terminal status. (Id.).

Defendant has not offered evidence that a pituitary tumor, or any other medical conditions that he has, amounts to a terminal illness or a serious medical condition. Instead, he

offers only vague assertions such as the "symptoms of this condition [the pituitary tumor] are becoming worse," and that generally his "health is deteriorating." (Doc. No. 86, pp. 8, 14). And even if he did establish that he had a serious medical condition, he would still have to show that the condition substantially diminished his ability to provide self-care within the environment of a correctional facility. See United States v. Clark, 2019 WL 1052020, at *1 (W.D.N.C. Mar. 5, 2019 (Even assuming Defendant's "declining health, diabetes, stage-3 kidney failure, and back issues that require a walker" qualified as serious medical conditions, "Defendant still falls short of the 'extraordinary and compelling' standard because she has not demonstrated that her condition substantially diminishes her ability to provide self-care within the corrections environment or that she is not expected to recover."); see also United States v. Manuel, 2020 WL 1466000, at *2 (D.S.C. Mar. 26, 2020) (Defendant who suffered from a chronic cardiac condition not entitled to early release because the BOP monitored and treated his condition and Defendant did not "show that his diagnoses affect his activities of daily living or ability to care for himself."). Here, none of Defendant's arguments, either alone or in combination, meet the "heightened standard" of demonstrating an "extraordinary and compelling" reason for relief.

Even if Defendant had demonstrated an extraordinary and compelling reason for compassionate release, the statutory sentencing factors and his dangerousness weigh against release. First, a court "must deny a sentence reduction unless it determines the defendant 'is not a danger to the safety of any other person or to the community.'" United States v. Taylor, No. 319CR00031, 2021 WL 244801, at *3 (W.D.N.C. Jan. 25, 2021). Defendant's criminal history and offense conduct, which he engaged in soon after his release from prison, demonstrate that he is a danger to the community. Before he started robbing banks, Defendant sustained a military conviction for distribution of cocaine that resulted in a prison term and a dishonorable discharge.

7

He was convicted also of uttering forged papers and possession of cocaine, and he violated his probation for such. (PSR ¶¶ 33, 34). After that, he served two separate stints, 92 months and then 151 months, in prison for his 1993 and 2000 bank robbery convictions. (Id. ¶¶ 36, 37). He violated two separate terms of supervised release when he committed bank robberies in 2000 and 2012. Defendant is currently in prison because he robbed his seventh bank. While Defendant used notes to accomplish the first six robberies, during the seventh robbery, he brandished a firearm and pointed it at two tellers and a customer.

Second, courts "must consider the § 3553(a) factors, as 'applicable.'" Taylor, 2021 WL 244801, at *3. Here, the Section 3553(a) factors such as "the nature and circumstances of the offense," the "history and characteristics of the defendant," and "the need for the sentence imposed to reflect the seriousness of the offense...to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," do not support compassionate release. 18 U.S.C. § 3553(a).

Here, reducing Defendant's prison sentence would lessen the capacity of that sentence to reflect the "seriousness of" Defendant's "offense," which this Court characterized as "a very dangerous crime," and one that might cause someone to "get[] hurt…[m]aybe killed." (Doc. No. 35, pp. 29–30). Moreover, Defendant has served only approximately half of his full term of imprisonment. Releasing him early is not warranted and would not provide adequate deterrence. (Ex. 2, p. 4). Additionally, as to Defendant's history and characteristics and the need to protect the public from Defendant's future crimes, Defendant's criminal history underscores that these statutory sentencing factors do not support his request for release. Defendant presents a serious risk of recidivism given that he committed this offense after (1) a military conviction for

8

distribution of cocaine that resulted in a prison term and a dishonorable discharge; (2) sustaining convictions for uttering forged papers and possession of cocaine and violating his probation for such; (3) having served two separate stints, 92 months and then 151 months, in prison for his 1993 and 2000 bank robbery convictions. (PSR ¶¶ 33, 34, 36, 37). He violated two separate terms of supervised release when he committed bank robberies in 2000 and 2012. See United States v. Willis, No. 3:94-CR-126, 2020 WL 6140447, at *2 (W.D.N.C. Oct. 19, 2020) ("Defendant would pose a significant danger to public safety if released based on," among other things, recidivism, where Defendant had a significant criminal history.).

In sum, even if Defendant could establish an extraordinary and compelling reason for compassionate release, the § 3553(a) factors strongly disfavor a sentence reduction. The sentencing factors direct the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, protect the public from future crimes of the defendant, and provide just punishment. Further, the Court is directed to consider the history and characteristics of defendant and the need for the sentence to afford adequate deterrence to criminal conduct. These factors weigh against any reduction in Defendant's sentence, given Defendant's lengthy criminal history and his high risk of recidivism. For all these reasons, the motion is denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 86), is **DENIED**.

Signed: March 10, 2023

Max O. Cogburn Jr.
United States District Judge